# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **SOCCER CONNECTION, INC., a Utah corporation; and WILLIAM RADER, an individual,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NIKE USA, INC., an Oregon corporation,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 1:18-cv-00017**<br><br>**Magistrate Judge Dustin B. Pead** |

This matter came before the Court on Defendant Nike USA, Inc.'s ("Nike") Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) ("Motion") (ECF No. 14.) The court heard oral argument on July 19, 2018. (ECF No. 24.) Lauren Shurman appeared on behalf of Nike and Zane Froerer appeared on behalf of Plaintiffs, Soccer Connection, Inc. ("Soccer Connection") and William Rader ("Rader"). Having considered the written submissions and arguments, the court now issues its Memorandum Decision and Order granting Defendant's Motion.

## I.     BACKGROUND

Plaintiffs Soccer Connection and Rader initiated this action against Nike in Utah state court, seeking damages stemming from an alleged termination by Nike of a "Partnership Agreement" between Soccer Connection, Nike, and non-party Wasatch Soccer Club (the "Club"). (State Court Action, Case No. 180900028.) Plaintiffs asserts three causes of action

against Nike: breach of contract, "bad faith breach of contract," and tortious interference. Nike removed the action to the federal court based on diversity and then moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 2, ECF No. 14.) The parties' consent to have this case heard by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12.)

## II.    PLAINTIFFS' COMPLAINT

The following facts are taken from Plaintiffs' Complaint and are accepted as true for purposes of this Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); Fed. R. Civ. P. 12(b)(6).

Soccer Connection operated as a retail store that sold soccer equipment, uniforms, and supplies. (ECF No. 2-2, ¶1.) Rader is the president and sole shareholder of Soccer Connection. (*Id.*, ¶2.) Nike is a multinational designer and manufacturer of athletic attire. (*Id.*, ¶3.)  Soccer Connection was a retailer of Nike products. (*Id.*, ¶4.) Through its retail store, Soccer Connection supplied uniforms to soccer teams, including the Club's teams. (*Id.*)  The Club is a non-profit youth soccer club that organizes competitive and recreational soccer teams. (*Id.*, ¶5.)

Soccer Connection alleges that a relationship between itself, Nike, and the Club was formed on or about April 16, 2014 when the parties entered into the Partnership Agreement. (*Id.* at ¶4.) Soccer Connection contends that the Partnership Agreement obligated Nike to supply uniforms to the Club through Soccer Connection for a six-year duration, from 2014 through 2020. (*Id.*, ¶20.) In exchange for product discounts, the Club agreed that its teams would wear exclusively Nike apparel and would purchase that apparel through Soccer Connection. (*Id.*, Exhibit A.) Plaintiffs attach a copy of the alleged Partnership Agreement to their Complaint. (*Id.*)

The pages of the Partnership Agreement show the logos of Nike and the Club, but the agreement bears only the signature of the "Club President or Designated Representative." (*Id.*) The Partnership Agreement was not signed by Nike or Soccer Connection. (*Id.*) The Partnership Agreement provides for an express term of February 1, 2014 to January 31, 2020 and labels the arrangement as a "6-year deal." (*Id.*)

In 2016, Nike informed Soccer Connection that it was terminating Soccer Connection's account and that it would no longer accept any new orders from Soccer Connection. (*Id.*, ¶15.) As a result, the Club no longer purchases its uniforms and supplies through Soccer Connection, which harmed Soccer Connection's retail business. (*Id.*, ¶40.) Plaintiffs also allege that a potential sale of Soccer Connection to a third party, Matthew Tidwell, fell through because of Nike's refusal to supply product to Soccer Connection. (*Id.*, ¶¶35-39.)

## III.     ANALYSIS

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan–Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). A claim must be dismissed if the complaint does not contain sufficient facts to make the claim "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a plaintiff is not required to include detailed factual allegations, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the

elements of a cause of action," and ultimately must "raise a right to relief above the speculative level." *Id.* at 555.

## B.      Breach of Contract

The elements of a prima facie case for breach of contract are: "'(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.'" *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (*quoting Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388). To state a claim for breach of contract, Plaintiffs must allege the existence of a valid contract and a breach of that contract by Nike. Here, Soccer Connection asserts that Nike breached the Partnership Agreement by prematurely terminating in 2016, prior to expiration of the agreement's six-year term.[1] Nike moves for dismissal on the grounds that the Partnership Agreement is void under Utah's statute of frauds.

Utah's statute of frauds provides that "every agreement that by its terms is not to be performed within one year from the making of the agreement" is "void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement." Utah Code Ann. §25-5-4(1)(a). The Partnership Agreement provides for a "6-year deal" with an express term of February 1, 2014 to January 31, 2020. (ECF No. 2-2, Exhibit A.) Thus, the Partnership Agreement is an "agreement that by its terms is not to be performed within one year from the making of the agreement." *Id.*  Further, the Partnership Agreement is not signed by Nike, the "party to be charged with the agreement."  *Id.* The

---

[1] Rader does not plead that he was a party to any contract with Nike and does not appear to have standing to assert the claims raised in the Complaint. However, the court need not reach the issue of Rader's standing because, as set forth herein, the claims themselves fail to state a claim for relief.

Agreement has only one signature: the signature of the "Club President or Designated Representative." In addition, Soccer Connection does not plead the existence of any other writing signed by Nike and by which Nike purportedly agrees to supply soccer equipment to Soccer Connection for a six-year term. Thus, the Partnership Agreement does not satisfy the statute of frauds pursuant to Utah Code Annotated §25-5-4(1)(a).

Plaintiffs do not dispute that the Partnership Agreement fails to satisfy the statute of frauds. Instead, they raise several arguments as to why the Partnership Agreement is not void. As set forth below, each of these arguments fails.

    1.    *The UCC Statute of Frauds*

Plaintiffs argue that the Partnership Agreement involves the sale of goods, and therefore the Uniform Commercial Code's statute of frauds (UCC statute of frauds) should apply rather than the more general statute of frauds found at Utah Code Annotated §25-5-4 (1)(a).

Chapter 2 of the UCC applies to transactions in goods. Utah Code Ann. §70A-2-102. The UCC statute of frauds applies to contracts involving the sale of goods for the price of more than $500. Specifically, UCC §70A-2-201 provides:

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Utah Code Ann. §70A-2-201(1).

Plaintiffs attempt to rely on the so-called "between merchants" exception to the UCC statute of frauds. UCA §70A-2-201(2) The "between merchants" exception states:

> [b]etween merchants if within a reasonable time a writing in
> confirmation of the contract and sufficient against the sender is
> received and the party receiving it has reason to know its contents,
> it satisfies the requirements of Subsection (1) against such party
> unless written notice of objection to its contents is given within
> 10 days after it is received.

Utah Code Ann. §70A-2-201(2).

Upon review, the court finds that Plaintiffs are unable to avail themselves of the "between merchants" exception to the UCC statute of frauds for several reasons. First, Plaintiffs do not establish the existence of an agreement that is governed by the UCC. Plaintiffs point only to the Partnership Agreement, but on its face, this agreement is not governed by the UCC. To determine whether a transaction is governed by Chapter 2 of the UCC, Utah law applies the "predominant purpose" test. *See Beehive Brick Co. v. Robinson Brick Co.*, 780 P.2d 827, 832 (Utah Ct. App. 1989) (*citing* Utah Code Ann. §70A-2-102; *Utah Local Gov't Tr. v. Wheeler Machinery Co.*, 2008 UT 84, ¶ 30, 199 P.3d 949. "If service predominates, and the transfer of title to personal property is only an incidental feature of the transaction, the contract does not fall within the ambit of chapter 2." *Beehive Brick Co.*, 780 P.2d at 832. In *Beehive Brick*, the Utah Court of Appeals held that an alleged agreement by Robinson Brick allowing Beehive Brick to become a distributor of its bricks did not fall within the ambit of Chapter 2 of the UCC. *Id.* The court reasoned that the primary purpose of the distributorship would have been to entitle Beehive Brick to perform the service of selling Robinson's bricks, not to transfer title to the bricks. *Id.*

The Court finds *Beehive Brick* analogous. Here, the predominant purpose of the Partnership Agreement is to govern the relationship between Soccer Connection, Nike, and the Club. The title of the agreement is "Partnership Agreement," thereby evidencing that the

agreement purports to govern the relationship among the parties, rather than transferring title to Nike goods. The obligations set forth in the agreement relate primarily to the Club's commitment that its members will wear Nike gear and that Nike will provide discounts on the Club's purchases. These obligations evidence a service transaction, as opposed to a transaction in goods. Plaintiffs argue the UCC applies because, but for the Partnership Agreement, discrete sales of Nike products to the Club could not take place. This is not pled, but assuming it could reasonably be construed, this does not transform the Partnership Agreement into a contract for the sale of goods. Performance under the Partnership Agreement, standing alone, does not result in the conveyance of goods from Nike to Soccer Connection or from Soccer Connection to the Club. Indeed, in order for sales to take place, separate orders would need to be placed for specific goods, notwithstanding the parties' performance under the Partnership Agreement. Accordingly, the Court finds that the predominant purpose of the Partnership Agreement is not to transfer title to goods, and therefore Chapter 2 of the UCC does not apply.

Moreover, even assuming that Chapter 2 of the UCC applied, Plaintiffs do not plead facts to support application of the "between merchants" exception to the UCC's statute of frauds. In order for the "between merchants" exception to apply, Plaintiffs must show that a merchant sent written confirmation of an oral agreement to Nike, that it was received by Nike, that Nike "has reason to know its contents," and that Nike failed to provide "written notice of [its] objection to [the] contents" within "10 days after it [was] received." Utah Code Ann. §70A-2-201(2). Here, Plaintiffs do not allege that: the Partnership Agreement was intended to be a written confirmation of an oral order for goods, anyone sent the Partnership Agreement to Nike, the person that sent the Partnership Agreement to Nike was a merchant, or that Nike failed to object to the

Partnership Agreement within 10 days of receipt. Thus, even assuming Chapter 2 of the UCC applied, the Partnership Agreement is void under the UCC's statute of frauds as an unsigned writing involving the sale of goods for the price of more than $500.[2] *See* Utah Code Annotated §70A-2-201(1).

2. *Estoppel Arguments*

Next, Plaintiffs argue Nike should be estopped from denying the enforceability of the Partnership Agreement. Soccer Connection raises two related theories of estoppel: first, Plaintiffs argue the doctrine of promissory estoppel should apply because Nike manifested an intent that it would not assert the statute of frauds; second, Plaintiffs argue that Nike partially performed under the Partnership Agreement, which estops Nike from denying its enforceability.

a. *Promissory Estoppel*

A defendant is estopped from asserting the statute of frauds as a defense "only when he or she has expressly and unambiguously waived the right to do so." *Stangl v. Ernst Home Center, Inc.*, 948 P.2d 356, 361 (Utah Ct. App. 1997). Under Utah law, "promissory estoppel will bar the defense of the statute of frauds only when the acts and conduct of the promisor so clearly indicate that he does not intend to avail himself of the statute that to permit him to do so would be to work a fraud upon the other party." *Id.* at 362 (alterations, internal quotation marks, and citation omitted). But "'[f]raud, generally, cannot be predicated upon the failure to perform a promise or contract which is unenforceable under the statute of frauds, for the promissor has not,

---

[2] Plaintiffs appear to tacitly concede that the Partnership Agreement is void under the UCC statute of frauds if the "between merchants" exception does not apply. Plaintiffs seek damages in excess of $500,000 based on the inability to sell goods pursuant to the Partnership Agreement.

in a legal sense, made a contract; and therefore, he has the right, both in law and equity, to refuse to perform.'" *Id.* (*quoting McKinnon v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 529 P.2d 434, 436 (Utah 1974)).

Plaintiffs raise promissory estoppel in their opposition, but do not assert a cause of action in the complaint and do not move to amend. In turn, the facts offered do not give rise to a claim for promissory estoppel or a reasonable inference that Nike did not intend to avail itself of the statute of frauds and nothing in the Partnership itself Agreement expresses any such indication. Plaintiffs argue that Nike's logo, which is affixed to the Partnership Agreement, suggests that Nike did not intend to sign the agreement and would not avail itself of the statute of frauds. The Court disagrees. The placement of Nike's logo on the Partnership Agreement does not amount to Nike's express and unambiguous waiver of the right to rely on the statute of frauds.

Second, Plaintiffs have not pled facts to show that Nike's reliance on the statute of frauds would work a fraud on Soccer Connection. The case of *Stangl v. Ernst Home Center, Inc.* is instructive. 948 P.2d 356 (Utah Ct. App. 1997). In *Stangl*, the plaintiff exercised its option to purchase a commercial building based on assurances from the defendant that it would be the anchor tenant for the building for 25 years. 948 P.2d at 358. After Stangl invested in the building, defendant called off lease negotiations and declined to become the anchor tenant. *Id.* at 359. Stangl sued based on a theory of promissory estoppel. *Id.* The Utah Court of Appeals held that promissory estoppel could not be invoked to "eviscerate the statute of frauds." *Id.* at 365. The court determined that defendant was not estopped from invoking the statute of frauds because defendant had not clearly manifested an intention that it would not assert the statute of frauds as a defense. *Id.* at 366. In so ruling, the court noted that Stangl's detrimental reliance on

Defendant's oral promises did not amount to a fraud; rather, Stangl "gambled that the negotiations would be successfully concluded" and proceeded to invest in the building before obtaining a written and signed agreement in compliance with statute of frauds requirements. *Id.* at 365.

Here, Plaintiffs allege that Soccer Connection's business suffered when Nike refused to honor its alleged six-year commitment under the Partnership Agreement. Plaintiffs assert that Soccer Connection's relationship with the Club was the largest part of its business, and Nike's refusal to honor its commitment caused the retail store to go out of business. Consistent with *Stangl,* these facts do not given rise to a fraud sufficient to estop Nike from relying on the statute of frauds. There is no allegation that Nike induced Soccer Connection to believe that it would not invoke the statute of frauds and Nike's mere promise to perform under the Partnership Agreement and "'subsequent refusal to do so is insufficient to create an estoppel, although reliance is placed on such a promise and damage is sustained as a consequence of the refusal.'" *Id.* (citation omitted).

b. *Partial performance*

Partial performance is a "species of estoppel," *Ravarino v. Price*, 260 P.2d 570, 574 (Utah 1953), that may be invoked to compel specific performance of a contract when reliance on the statute of frauds would "work a fraud upon the other party," *McKinnon*, 529 P.2d at 437. The Utah Supreme Court cautions that the doctrine should be "applied with great care" so as not to eviscerate the statute of frauds but rather to prevent that statute from "being made the means of perpetrating a fraud." *Ravarino*, 260 P.2d at 578.

Here too, Plaintiffs do not plead an estoppel claim under a partial performance theory. Plaintiffs raise partial performance as a defense to Nike's Motion but do not move to amend to assert an estoppel by partial performance theory. Nonetheless, for the following reasons, the facts do not give rise to an estoppel based on partial performance. First, there is no allegation that Nike performed under the agreement. Second, Plaintiffs seek damages, not specific performance of the Partnership Agreement. However, the doctrine of part performance is not available in an action at law for monetary damages for breach. *McKinnon,* 529 P.2d at 436. Third, as set forth above, Plaintiffs fail to show that Nike's invocation of the statute of frauds, after partially performing under the Partnership Agreement, would amount to a fraud. At most, Soccer Connection contends that it will not receive the full benefits it expected under the Partnership Agreement. But, as explained above, this is not enough to give rise to an estoppel. *Cf. Ravarino,* 260 P.2d at 578 (refusing to invoke doctrine of partial performance to avoid statute of frauds).[3]

In sum, the Court finds that Plaintiffs fail to state a claim for breach of contract because they fail to allege the existence of a valid contract. Plaintiffs have only pled the existence of a six-year deal under a Partnership Agreement that is void because it was not signed by the party to be charged. *See* Utah Code §25-5-4(1). The Court therefore dismisses Plaintiffs' claim for breach of contract. *See* Fed. R. Civ. P. 12(b)(6).

---

[3]  It is also worth noting that, although Plaintiffs urge that the Partnership Agreement is governed by Chapter 2 of the UCC, their partial performance argument would not entitle them to the damages they seek if the UCC applied. Under the UCC, partial performance can validate a contract only for the goods which have been accepted or for which payment has been made and accepted.  Utah Code Ann. §70A-2-201 cmt. 2. Soccer Connection would thus only be able to seek damages for goods that it paid for and that Nike refused to deliver after accepting payment. It could not seek damages based on a failure to perform for an entire six-year term. Soccer Connection does not allege that it paid Nike for goods or that Nike accepted payment but refused to deliver the goods.

### C. Bad Faith Breach of Contract

In support of their claim for "bad faith breach of contract," Plaintiffs allege Nike "terminated its services to Soccer Connection," that Nike's actions were "in bad faith and done in reckless disregard of [Soccer Connection's] rights," and that Plaintiffs are entitled to "appropriate punitive damages" for Nike's "bad faith breach of contract." (ECF No. 2-2, ¶¶27-28.) At argument, counsel conceded that the claim was not for breach of the implied covenant of good faith and fair dealing, but rather a novel claim seeking punitive damages based on a bad faith breach of contract.

Plaintiffs' "bad faith" claim appears to be an attempt to apply insurance law principles f to this breach of contract case. In a third-party insurance relationship, the insurer controls disposition of claims against its insured and thus owes fiduciary duties to its insured. *Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 25, 100 P.3d 1163. In that context, an insurer's refusal to settle a claim in "bad faith" may give rise to a claim for breach of fiduciary duty, for which ordinary tort damages, including punitive damages, are owed. *See id.*; *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 800 (Utah 1985). This type of "bad faith" claim has no applicability to an ordinary breach of contract dispute. Plaintiffs do not plead a claim for breach of fiduciary duty or facts to suggest that Nike was in a fiduciary relationship with Soccer Connection. Instead, Plaintiffs assert that the relationship between Nike and Soccer Connection was a contractual relationship, governed by the Partnership Agreement.

Under Utah law, where the obligations and duties owed between parties arise under a contract, "a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort." *Beck*, 701 P.2d at 800. Punitive damages are not recoverable for a

breach of contract claim. *See id.*; *Black*, 2004 UT 66, ¶¶ 24-28. Accordingly, Plaintiffs' claim for "bad faith breach of contract" is not cognizable under Utah law and is dismissed for failure to state a claim.

**D.    Tortious Interference**

Under Utah law, a claim for tortious interference requires a plaintiff to prove: (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, and (3) causing injury to the plaintiff. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. Plaintiffs allege that Nike's conduct in terminating the Partnership Agreement and refusing to accept new orders from Soccer Connection: interfered with Soccer Connection's relationship with the Club, caused damages to Soccer Connection because Soccer Connection was unable to fill orders for the Club, and caused the sale of Soccer Connection to Mr. Tidwell to fail. Plaintiffs' claim for tortious interference, however, must fail because Plaintiffs do not assert any improper means to satisfy the second element of the tort.

The "improper means" element of a tortious interference claim is satisfied "when 'the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules.'" *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993) (*quoting Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982)). A breach of a party's own contract does not constitute improper means to support a claim for tortious interference. "It is settled that one party to a contract cannot be liable for the tort of interference with contract for inducing a breach by himself or the other contracting party." *Leigh Furniture*, 657 P.2d at 301 (citing cases), *overruled on other grounds by Eldridge*, 2015 UT 21, ¶ 70. Moreover, "[a] deliberate breach of contract,

even where employed to secure economic advantage, is not, by itself, an 'improper means.'" *Id.*

at 309; *see also First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15 CV 229, 2016

WL 6956603, at *2 (D. Utah Nov. 27, 2016) ("breaching or inducing breach of a contract with

improper purpose cannot be considered a possible improper means" (*citing Eldridge*, 2015 UT

21, ¶ 64)).

Other than termination of the Partnership Agreement, Plaintiffs do not assert any

improper conduct by Nike. Because, as set forth above, the Court finds that the Partnership

Agreement is unenforceable under the statute of frauds, Plaintiffs cannot establish that Nike even

breached a contract. Yet even assuming Nike breached an enforceable contract, this would not be

sufficient to sustain a claim for tortious interference. *See Leigh Furniture,* 657 P.2d at 301 (a

party's breach of its contractual obligations is not improper means). Were it otherwise, virtually

any breach of contract could give rise to liability under a theory of tortious interference.

Accordingly, Plaintiffs' claim for tortious interference fails.

## IV.     CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs fail to state a claim against

Nike and therefore Plaintiffs' Complaint should be dismissed under Federal Rule of Civil

Procedure 12(b)(6).  Plaintiffs did not amend as a matter of course, *see* Fed. R. Civ. P.

15(a)(1)(B), and have not otherwise sought leave to do so. *See* Fed. R. Civ. P. 15(a)(2).

Accordingly, dismissal with prejudice is warranted.

**ORDER**

IT IS HEREBY ORDERED that Nike's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim is GRANTED. (ECF No. 14.) Plaintiffs' Complaint shall be dismissed in its entirety with prejudice.

Dated:  August 10th , 2018.

_____
Honorable Dustin B. Pead
United States Magistrate Judge